**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| ROBERT W. CLOUGH, II, on behalf of himself and others similarly situated, | : | CIVIL ACTION FILE NO. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **COMPLAINT – CLASS ACTION** |
| | : | |
| PLYMOUTH ROCK ASSURANCE CORPORATION and AVENGE DIGITAL, LLC | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendants. | : | |

Plaintiff Robert W. Clough, II (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1.      "If robocalls were a disease, they would be an epidemic." *Rage Against Robocalls*, Consumer Reports (July 28, 2015, 6:00 AM), ttps://www.consumerreports.org/cro/magazine/ 2015/07/rage-against-robocalls/index.htm. "Robocalls" are the number one consumer complaint in America today.

2.      Even as far back as 2012, the Pew Research Center reported 69 percent of cellular users who use text messaging receive unwanted text message spam, with 25 percent of them receiving it on a weekly basis.  Jan Lauren Boyles and Lee Rainie, *Mobile Phone Problems*, Pew Research Center (Aug. 2, 2012), http://www.pewinternet.org/2012/08/02/mobile-phone-problems.

3.      Robocalls, including automated calls have only increased since the 2012 study. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC Chairman).

4.      "The FTC receives more complaints about unwanted calls than all other complaints combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the TCPA of 1991, Notice of Proposed Rulemaking*, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016), *available at* https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

5.      This case involves a campaign by Avenge Digital, LLC, a telemarketer retained by Plymouth Rock Assurance Corporation ("Plymouth Rock") to market Plymouth Rock's services through the use of automated telemarketing calls in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

6.      Moreover, Plymouth Rock's telemarketer sent multiple calls to residential telephone numbers that are registered on the National Do Not Call List (hereafter "NDNC"), which is a separate and additional violation of the TCPA. The recipients of these illegal calls, which include Plaintiff and the proposed classes, are entitled to damages under the TCPA.

## PARTIES

7.      Plaintiff is, and at all times mentioned herein was, an individual citizen of New Hampshire.

8.      Defendant Plymouth Rock Assurance Corporation is a corporation that has its principal place of business in Massachusetts, and has a registered agent of Aaron M. Wheaton at 695 Atlantic Ave., Boston, MA 02111.

9.      Defendant Avenge Digital, LLC is a Washington limited liability company with its principal place of business at 16632 NE 26th St, Bellevue, WA 98008 and a registered agent of Yevgeny Torchinsky at the same address.

## JURISDICTION AND VENUE

10.      The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. 1332(d)(2).  The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA.  Further, Plaintiff alleges a national class, which will result in at least one Class member from a different state.

11.      This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

12.      This Court has personal specific jurisdiction over Avenge Digital because the company made, or caused to be made, the illegal telemarketing calls at issue to be sent into this District.

3

13.     This Court has personal specific jurisdiction over Plymouth Rock because the company offered its insurance services to the Plaintiff in this District, including by making additional efforts to contact the Plaintiff directly to sell its services following the initial telemarketing calls.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff Clough is a resident of this District, which is where he received the illegal telemarketing calls that are the subject of this putative class action lawsuit.

## TCPA BACKGROUND

Calls Made Using an "Automated Telephone Dialing System"

15.     The TCPA regulates, among other things, the use of a pre-recorded message or an automated telephone dialing system ("ATDS") to make calls or send automated calls. *See* 47 U.S.C. § 227, *et seq.*; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

16.     Specifically, the TCPA prohibits the use of an automated telephone dialing system to make any telemarketing call or send any telemarketing text message to a wireless number in the absence of an emergency or the prior express written consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831 (F.C.C. 2012).

17.     The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1)(A)-(B). The first

component of this definition is satisfied when a dialing system has the capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a database of numbers." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, ¶ 133 (2003); *see In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (F.C.C. 2008) (rejecting argument that a dialing system "meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists" and reasoning that "the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective"); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1051 (9th Cir. 2018) (holding that "equipment that made automatic calls from lists of recipients was . . . covered by the TCPA").

18.      "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  47 C.F.R. § 64.1200(f)(12).

19.      "[P]rior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."  47 C.F.R. § 64.1200(f)(8).

The National Do Not Call Registry

20.      Second, § 227(c) of the TCPA requires the FCC to "initiate a rulemaking

5

proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

21.     In this rulemaking proceeding, the FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

22.     Pursuant to this statutory mandate, the FCC issued two regulations, only one of which is relevant here.

23.     The relevant regulation under § 227(c) established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

24.     The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

25.     However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

26.     A violation of § 227(c) through 47 C.F.R. § 64.1200(d) carries statutory damages of $500 to $1,500 per call.

6

27.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

28.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

29.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## **FACTUAL ALLEGATIONS**

30.     Defendant Plymouth Rock is a "person" as the term is defined by 47 U.S.C. § 153(39).

31.     Defendant Avenge Digital is a "person" as the term is defined by 47 U.S.C. § 153(39).

32.     At no point has Plaintiff Clough sought out or solicited information regarding Defendant Plymouth Rock's services.

33.     Plaintiff Clough's telephone number, XXX-XXX-7234, is registered to a cellular telephone service.

34.     The Plaintiff Clough received several telemarketing calls promoting the Defendant's goods or services, including on January 6, 8 and 29, 2020.

7

35. When a call was answered, unlike on a normal call, no one promptly announced herself to Plaintiff. Instead, Plaintiff heard an unnatural click and pause.

36. The pause signifies the algorithm of the predictive dialer operating. The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

37. The dialing system used also has the capacity to store telephone numbers in a database and dial them automatically with no human intervention.

38. Loading a list of telephone numbers into the dialing system and pressing a single command does this.

39. As a predictive dialer, the dialing system can also produce numbers using a sequential number generator and dial them automatically.

40. The dialing system can do this by inputting a straightforward computer command.

41. Following that command, the dialing system will sequentially dial numbers.

42. First, it would dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

43. This would be done without any human intervention or further effort.

44. The calls came from "spoofed" Caller ID numbers, including 603-731-8505, 603-731-8298 and 603-731-9252.

45. The application NomoRobo, winner of the FTC's contest related to tracking and stopping unwanted calls, also has reported calls from that number as unwanted solicitations. *See* https://www.nomorobo.com/lookup/757-772-1059. (Last Visited February 14, 2020).

8

46.     As a result, the system that sent automated calls to Plaintiff Clough qualifies as an ATDS pursuant to 47 U.S.C. 227(a)(1)(A).

47.     Finally, on January 30, 2020, the Plaintiff engaged the telemarketer to learn their identity.

48.     The call promoted Plymouth Rock's services.

49.     The caller attempted to sell the Plaintiff an insurance policy for Plymouth Rock.

50.     The call ended with an e-mail from the following representative with the Defendant:

Jaime Hansen
Qualifying Marketing Associate for Prudential Agent Jeffery Hinkle
Plymouth Rock Assurance
(732) 595-7348 x107
jaime.hansen@prudential.com

51.     The calls received by Plaintiff were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as it seeks to have him sign up for Plymouth Rock's services.  This message therefore qualified as telemarketing.  47 C.F.R. § 64.1200(f)(12).

52.     Plaintiff Clough's number is used exclusively for residential, non-commercial purposes.

53.     Plaintiff Clough's cellular telephone number was on the National Do Not Call Registry for more than 31 days prior to the receipt of the first call advertising Plymouth Rock's goods or services.

54.     The calls were not necessitated by an emergency.

9

55.     Plaintiff and all members of the Class, defined below, have been harmed by the

acts of Defendant because their privacy has been violated, they were annoyed and harassed, and,

in some instances, they were charged for incoming calls. Plaintiff and the Class Members were

also harmed by use of their cell phone battery and the intrusion on their cellular telephone that

occupied it from receiving legitimate communications.

## PLYMOUTH ROCK'S LIABILITY FOR THE CALLS AT ISSUE

56.     For twenty-five years the FCC has explained that its "rules generally establish that

the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."

*In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum

Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

57.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a

corporation or other entity that contracts out its telephone marketing "may be held vicariously

liable under federal common law principles of agency for violations of either section 227(b) or

section 227(c) that are committed by third-party telemarketers."[1]

58.     In that ruling, the FCC instructed that sellers such as Plymouth Rock may not

avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing
> activities to unsupervised third parties would leave consumers in many cases
> without an effective remedy for telemarketing intrusions. This would particularly
> be so if the telemarketers were judgment proof, unidentifiable, or located outside
> the United States, as is often the case. Even where third-party telemarketers are
> identifiable, solvent, and amenable to judgment limiting liability to the telemarketer
> that physically places the call would make enforcement in many cases substantially
> more expensive and less efficient, since consumers (or law enforcement agencies)

[1]     *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling
Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

> would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

59.     The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

60.     Avenge Digital has a network of calling centers that it uses to engage in telemarketing of insurance services.

61.     Avenge Digital was contractually required to promote Plymouth Rock products on their telemarketing calls in order to potentially generate new customers, and did so, as they did with the Plaintiff.

62.     Plymouth Rock knew that Avenge Digital was making automated telemarketing calls.

63.     Avenge Digital's calls also engage the use of a series of pre-recorded, or IVR, questions to identify which call recipients are transferred to Plymouth Rock.

64.     In fact, Avenge Digital's website tells their clients, like Plymouth Rock, "Don't Buy Leads, Buy Calls". *See* https://avengedigital.com/pay-per-call/ (Last Visited March 5, 2020).

65.     Plymouth Rock was knowingly and actively accepting the business that originated through the illegal telemarketing calls through the issuance of insurance policies.

66.     In fact, Plymouth Rock derived a benefit from its interaction with the Plaintiff by the issuance of a policy quote.

67.     Moreover, Plymouth Rock maintained interim control over Avenge Digital's actions.

68.     For example, Plymouth Rock had absolute control over whether, and under what circumstances, it would accept a customer.

69.     Furthermore, Plymouth Rock had day-to-day control over Avenge Digital's actions, including the ability to prohibit it from using automated methodology to contact potential customers of Plymouth Rock.

70.     Plymouth Rock failed to make such an instruction to Avenge Digital, and as a result, is liable for Avenge Digital's conduct.

71.     Plymouth Rock also gave interim instructions to Avenge Digital by providing the volume of calling and leads it would purchase.

72.     Plymouth Rock knew, or should have known, that Avenge Digital was generating the leads through conduct that violated the TCPA.

73.     Plymouth Rock has previously received complaints regarding the telemarketing conduct of its third party vendors.

74.     Avenge Digital has also previously been sued for TCPA violations. *See e.g. Blackbourn v. Avenge Digital, LLC, et. al.*, Civil Action No. 19-cv-4655 (N.D. Ill.).

75.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority

12

on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## CLASS ACTION ALLEGATIONS

76.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

77.     Plaintiff brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

78.     Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**Robodialing Class:** All persons in the United States who, within four years prior to the commencement of this litigation until the class is certified, received one or more autodialed calls on their cellular telephone from or on behalf of the Defendants, sent via the same, or substantially similar, system used to contact the Plaintiff.

**National Do Not Call Registry Class**: All persons in the United States whose telephone numbers were on the National Do Not Call Registry, but who received more than one telephone solicitation telemarketing call from or on behalf of the Defendants with a 12-month period, from four years prior the filing of the Complaint.

79.     Plaintiff Clough is a member of and will fairly and adequately represent and protect the interests of, these Classes as he has no interests that conflict with any of the class members.

80.     Excluded from the Classes are counsel, the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

13

81.     Plaintiff and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their cell phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

82.     This Class Action Complaint seeks injunctive relief and money damages.

83.     The Classes as defined above are identifiable through dialer records, other phone records, and phone number databases.

84.     Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in each class.

85.     The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

86.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

87.     There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

88.     There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

      (a) whether an automatic telephone dialing system to send its to the members of the Robocall Class;

      (b) Whether agents operating on behalf of Defendant utilized an automatic telephone dialing system in sending automated calls to members of the Robocall Class;

(c) whether multiple telemarketing telephone calls were made promoting the Defendant's goods or services to members of the National Do Not Call Registry Class;

(d) whether the telemarketing calls at issue were made to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

(e) whether Defendant's conduct constitutes a violation of the TCPA; and

(f) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

89. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

90. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

91. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

92. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

93. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**FIRST CAUSE OF ACTION**
**Statutory Violations of the Telephone Consumer Protection Act**

15

**(47 U.S.C. 227, et seq.) on behalf of the Robocall Class**

94.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

95.     The Defendants violated the TCPA by sending, or causing to be sent via an agent, automated calls to the cellular telephones of Plaintiff and members of the Robocall Class using an automated dialer without their prior express written consent.

96.     As a result of the Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

97.     The Plaintiff and Robocall Class Members are entitled to an award of treble damages if their actions are found to have been knowing or willful.

98.     Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting the Defendant from advertising their goods or services, except for emergency purposes, using an ATDS or pre-recorded voice in the future.

**SECOND CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(d))**
**on behalf of the National Do Not Call Registry Class**

99.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

100.    Defendants violated the TCPA and the Regulations by making, or having its agent make, two or more telemarketing automated calls within a 12-month period on Plymouth Rock's

16

behalf to Plaintiff and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

101.    As a result of the Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and National Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

102.    Plaintiff and National Do Not Call Registry Class members are also entitled to and do seek injunctive relief prohibiting the Defendant from advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future.

103.    The Defendants' violations were knowing or willful.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.    Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry or to any cellular telephone numbers using a prerecorded voice in the future;

B.    As a result of the Defendants' violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Robocall Class member up to treble damages, as provided by statute, of $1,500 for each and every violation of the TCPA;

C.    As a result of the Defendants' willful and/or knowing violations of 47 C.F.R. § 64.1200(d), Plaintiff seeks for himself and each member of the National Do Not Call Registry

17

Class up to treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

    D.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

    E.      Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Respectfully  Submitted, Robert W. Clough, II By his attorneys:

> *ls/Roger B. Phillips*
> Roger B. Phillips
> Phillips Law Office, PLLC
> 104 Pleasant Street
> Concord, NH
> 03301
> NHBarNo.2018
> (603) 225-2767
> roger@phillipslawoffice.com

Edward A. Broderick
Broderick Law, P. C.
99 High St., Suite 304
Boston, MA 02110
(617) 738-7080
ted@broderick-law.com
*Subject to Pro Hac Vice*

18

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(617) 485-0018
anthony@paronichlaw.com
*Subject to Pro Hac Vice*

Alex M. Washkowitz
Jeremy Cohen
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com
*Subject to Pro Hac Vice*

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South A venue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
mmccue@massattorneys.net
*Subject to Pro Hac Vice*