# AvengeDigital- Insertion Order

| Buyer Information: | |
|---|---|
| Buyer Name: | Plymouth Rock Management Company of New Jersey |
| Contact Name: | John Rubino |
| Address: | 331 Newman Springs Road Suite 304 |
| City, State, Zip | Red Bank, NJ 07701-5692 |
| Phone #: | 7329787162 |
| Skype Id: | |
| E-mail Address: | jrubino@plymouthrock.com |
| Web Address: | |

## Campaign Description

| | | |
|---|---|---|
| Campaign Name: | Auto Insurance Pay Per Call | |
| Budget/CAP*: | n/a | |
| Qualified Call Price: | Adjustable | |
| Payable Duration**: | 120 seconds | |
| Required Inbound Traffic: | Consumer Initiated Phone Calls Only | |
| Approved Marketing: | Paid & Organic Search, Email, Billboards, Flyers, TV, Radio | |
| Restricted Marketing: | Incentive, Co-reg, Rewards, SMS, Call Center Transfers | |
| Call Center Hours: | | |
| Location(s): | | |
| Campaign Duration: | From: Asap | To: Ongoing |
| Call Tracking System: | AvengeDigital | |
| Payment Frequency: | | |
| Payment Terms: | | |
| Payment Method | ☐ PayPal: _____ | ☐ ACH (complete attach form) |

**Payment Terms:** Weekly Invoicing (Page 2, Section 3 for more details)
*Publisher will receive credentials to access & manage online account through www.AvengeDigital.com
**Duplicate calls will not be billable for _____ days. Pay AvengeDigital IVR is NOT included in payable duration.

### Special Instructions

1. Either party may cancel this campaign with 48 hours written notice.
2. All modifications to an active campaign including: Payout Changes, Creative Updates, Deactivations, Changes in Campaign Status, and any other modifications must be emailed to Alex@avengedigital.com.
3. Pending commissions must be resolved 5 business days after the end of the month.
4. Term shall renew automatically in one-month increments unless either party notifies the other of its intention to terminate prior to the expiration of the then current term.

## Pay Per Call Market Master Terms and Conditions

Please email completed and signed form to alex@avengedigital.com

**1. TERMS AND CONDITIONS:**
This Pay Per Call Master Market Terms and Conditions shall govern the insertion order (the "Insertion Order" or "IO") and is entered into by and between _Plymouth Rock Management Company of New Jersey_____ ("Advertiser" or the "Client") and AvengeDigital ("Publisher," or the "Company") and sets forth the parties' respective rights and obligations with respect to the above-referenced advertising campaign (the "Advertising Campaign"). The Pay Per Call Master Market Terms and Conditions and Insertion Order shall collectively be referred to as the "Agreement". Advertiser acknowledges that the sole obligation of Publisher is to conduct the Advertising Campaign described in this Agreement. Publisher shall not disclose any of the terms and conditions of this Agreement to any third party without the express prior written consent of Advertiser.

**2. ADVERTISING TERMS:**
For the purposes of the Insertion Order the following are defined as such:

   A.   CPC = cost per call

**3. PAYMENT**:

Advertiser will process payment to Company's PayPal account or by ACH or check by the due date of invoices. The amount processed on each occurrence will be reported via invoice prior to payment being processed. Advertiser will only pay the above account for services rendered as calculated and determined per reporting via AvengeDigital for all calls. In the event of report discrepancy, advertiser has 48 hours from receipt of invoice to report any discrepancy. Any approved discrepancy will be credited on next invoice.

Advertiser agrees to pay Company for all advertising published by Company on a CPC basis in accordance with the terms of the Insertion Order and the Advertising Campaign Notes set forth hereinabove. Unless otherwise stated, Company will invoice Advertiser for commissions generated by Company on weekly basis. Each Monday at 12:01 AM, the Advertiser will submit an invoice to Company for commissions generated from the calendar week prior to the last week.

Unless otherwise stated in the insertion order, Advertiser shall remit payment to the Company's office on each invoice within seven (7) business days of sending the invoice. All payments not made before or on the 7th business day after the invoice shall bear interest at the rate of 1.5% a month, or the highest rate allowable by law, whichever is greater. Advertiser agrees that it shall be solely liable for payment to Company. Further, Advertiser represents and warrants that it will furnish payment on all invoices, notwithstanding any non-payment to Advertiser by any third party including, without limitation, Advertiser's client(s). Company's failure to invoice Advertiser on a weekly basis shall not constitute the waiver of any amounts due to Company by Advertiser and/or Company's breach of this Agreement.

In the event of Advertiser's default relating to the payment of any invoice, Company shall have the right to require payment for further advertising under any Insertion Order upon such terms as Company may see fit.

Advertiser agrees to pay all costs incurred by Company including, but not limited to, collection agency and attorneys' fees and costs, as a result of having to enforce this Agreement.

Should any party retain counsel for the purpose of enforcing, preventing the breach, or because of a breach of any provision of this Agreement, then, if said matter is settled by judicial determination (which term includes arbitration in the event the parties utilize arbitration), the prevailing party (whether at trial or on appeal) shall be entitled, in addition to such other relief as may be granted, to all costs and expenses rendered to such prevailing party, including, without limitation, actual professional fees and costs such as appraisers', accountants', experts' and attorneys' fees and costs, incurred by the party which prevails in such action.

**4. REPORTING:**

The reporting system of record will be AvengeDigital for all calls. A login will be provided to the Advertiser for these systems. Additionally, Advertiser may use their own tracking methods, and in the case of discrepancy between Companies reporting and Advertisers reporting, both parties agree to use AvengeDigital reporting for conversions.

**5. CLIENT'S COVENANTS/COMPANY'S COVENANTS**:

Client covenants that it holds the necessary intellectual property rights and/or licenses to permit the use of the content by Company and any and all Company publishers and that Client will not publish, distribute or otherwise provide to Company for use hereunder any content that: (a) infringes on any third party's copyright, patent, trademark, trade secret or other proprietary rights; (b) violates any law, statute, ordinance or regulation regarding the creation and marketing of online materials including, without limitation, those governing false and/or deceptive advertising; (c) is defamatory or trade libelous; (d) is pornographic or obscene; (e) contains viruses, Trojan horses, worms, time bombs, cancel bots or other similar harmful or deleterious programming routines.

Advertiser may not assign this Agreement without Company's prior written consent. Company may assign all or a portion of its duties and obligations in connection with serving the Content hereunder to any affiliate, successor and/or other third party with Advertiser's prior written consent which shall not be unreasonably withheld. Subject to the foregoing, the terms of this Agreement will be fully binding upon, inure to the benefit of and be enforceable by, the parties' respective successors, heirs, executors, administrators and permitted assigns.  If Company uses third parties to serve the Content hereunder ("Affiliates"), then Company shall be responsible for such Affiliates complying with the obligations set forth in this Agreement and shall be primarily liable for all acts and omissions of such Affiliates.  Company shall perform commercially reasonable due diligence on its Affiliates, and (a) contractually require each such Affiliate to comply with all applicable laws, rules and industry guidelines; (b) shall use its commercially reasonable efforts to monitor its Affiliates' marketing of Advertiser products to ensure compliance with the Agreement; and (c) not permit any person to become an Affiliate and market an Advertiser product who has ever been suspended or terminated from marketing any product or service as a result of any fraudulent, noncompliant or unethical marketing tactics or behavior.

Company represents, warrants and covenants that: (a) it has and will maintain all necessary rights and authority to enter into this Agreement; (b) the execution of this Agreement by Company and the performance of its obligations and duties hereunder, do not and will not violate any applicable laws and regulations (including, without limitation any privacy and deceptive trade practice laws) or any agreement to which Company is a party or by which it is otherwise bound and it has posted a privacy policy that permits the transfer or sale of certain information to a third party and accurately describes its privacy practices, including but not limited to, the information it gathers, the manner in which it is gathered and the information that is shared with third parties; (c) neither Company nor any Affiliates will alter, modify, adapt, edit or change the Content or any element thereof without prior written approval from Advertiser in each instance; (d) Company's performance under this Agreement does not and will not infringe upon or violate the patents, copyrights, trademarks or trade secrets or any other right of any third party; (e) Company and all Affiliates will strictly adhere to all advertising/marketing/promotion rules, regulations and guidelines propounded by the Mobile Marketing Association (including, without limitation, the U.S. Consumer Best Practices Guidelines currently available at http://mmaglobal.com/bestpractices.pdf as may be updated from time to time) and/or any wireless carrier.

**6. CONTENT CONTROL:**
Client will be solely responsible for creating, managing, editing, reviewing, deleting and otherwise controlling the content ("Content"), unless otherwise agreed to in writing by both parties. Client acknowledges that, in providing Company with the ability to publish and distribute the Content, Company is acting only as a passive conduit for the distribution and publishing of such Content. Client retains complete discretion over the Content published and distributed by Client. Company has no obligation to Client, and undertakes no responsibility, to review the content or user-generated content to determine whether any such content may result in liability to third parties. Company represents and warrants the Content shall not be changed without the prior written consent of Advertiser.  Advertiser must approve the final content. Advertiser hereby grants to Company a limited, non-exclusive license to use, display, transmit and distribute the Content solely for the limited purpose of fulfilling the advertising services covered by this Agreement as specifically requested by Company and only in accordance with the terms of this Agreement.  Except as expressly set forth in the Insertion Order, the specific positioning of advertisements by the Company shall be approved by Advertiser's Contact person listed in the Insertion Order.  Advertiser reserves the right to suspend the use of any Content at any time.  In the event of such a suspension request, Company will take all necessary steps to immediately terminate use of such Content (including any use by Affiliates) and will return all copies of Content and confidential information to Advertiser. Company shall be responsible for any unauthorized use of the Content or other confidential information provided to the Company by Advertiser.

**7. DISCLAIMER OF WARRANTIES:**
Except as otherwise agreed herein, Company provides the Advertising Campaign and all services performed hereunder "AS IS" and hereby expressly disclaims all warranties, expressed or implied, regarding Company's services or any portion thereof, including any implied warranty of merchantability or fitness for a particular purpose and implied warranties arising from course of dealing or course of performance. Without limiting the generality of the foregoing, Company specifically disclaims any warranty regarding: (1) the number of persons who will access the Content; and (2) any benefit Client might

obtain from the Advertising Campaign. Company does not guarantee continuous or uninterrupted service to the campaign. All numbers and amounts relating to sales or leads contained in this Agreement are estimates only and are not at all guaranteed by Company. Due to the nature of the advertising methods, over-delivery and under-delivery are typical. In the case that Company over delivers (ie. Advertiser orders and pays for 100 leads and Company delivers to the Advertiser 125 leads) then Advertiser shall be liable for payment of all overage up to twenty-five percent (25%) of the amount ordered unless otherwise agreed. Company shall follow a uniform policy to avoid discrimination in its dealings with Advertiser and agencies. Although Company makes every effort to uphold the highest standards of online marketing conduct, it will not be liable to Advertiser for any losses incurred by Advertiser through promotional activity engaged in by Company on behalf of Advertiser in strict compliance with this Agreement.

**8. LIMITATIONS ON LIABILITY**:
Absent gross negligence and willful misconduct and except in connection with its indemnification obligations hereunder, in no event shall either party be liable for any special, direct, indirect, incidental, actual, punitive or consequential damages, or for interrupted communications, lost data or lost profits, arising out of, or in connection with, this Agreement. Except in connection with its indemnification obligations hereunder, neither party shall be liable to the other or any third parties for an amount greater than the amounts received from Client pursuant to this Agreement.

**9. PRIVACY:**
All parties represent and warrant that they are fully compliant with applicable privacy laws, and all federal and state regulations. All parties shall also provide notice for, and fully disclose, their respective privacy policies and practices to visitors to their website(s). Client warrants that engaging in the services provided by the Company pursuant to this Agreement shall not violate Client's privacy policy.

**10. NON SOLICITATION:**
Advertiser recognizes that Company has proprietary relationships with the Affiliates and other third-party publishers that participate in its network and provide advertising inventory to Company to Advertiser specifically hereunder. Advertiser agrees not to knowingly circumvent Company's relationship with such parties, or otherwise solicit, induce, recruit or encourage, directly or indirectly, any of such Affiliate or third-party publisher for purposes of obtaining advertising, marketing or promotional services materially similar to Company's services to Advertiser hereunder, during the term of this IO and for the six (6) month period following termination or expiration of this IO. Advertiser further agrees not to reverse engineer or trace Affiliate traffic as a means to directly solicit Affiliates, other advertisers, third-party publishers or others away from Company, as applicable. Notwithstanding this non solicitation clause, this section shall not apply to any Affiliates and other third-party publishers with whom Advertiser or its parent or subsidiaries has a business relationship with either directly or via other third party networks or entities providing advertising inventory and services.

Likewise, Company recognizes that Advertiser has proprietary relationships with the third party advertisers. Company agrees not to circumvent Advertiser's relationship with such parties, or otherwise solicit, induce, recruit or encourage, directly or indirectly, any of such third-party advertisers for purposes of obtaining advertising, marketing or promotional services materially similar to Advertiser's services hereunder, during the term of this Agreement and for the six (6) month period following termination or expiration of this Agreement. Notwithstanding this non-solicitation clause, this section shall not apply to any Advertiser third-party advertisers with whom Company has a business relationship with directly.

**11. CONFIDENTIALITY:**
As used herein, "Confidential Information" shall mean: (a) either party's proprietary information; (b) information marked or designated by either party as confidential; (c) Company suppression lists disclosed between the parties pursuant to this Agreement; (d) information otherwise disclosed by either party in a manner consistent with its confidential nature; (e) the terms and conditions of this Agreement, including pricing information; and (f) either party's information that is conveyed to the other party, whether or not in written form and whether or not designated as confidential, that is known, or should reasonably be known, by the other party to be treated as confidential. The parties acknowledge that, as a result of the provision of services pursuant to this Agreement, one party may disclose Confidential Information ("Disclosing Party") to the other party ("Receiving Party"). Therefore, the Receiving Party agrees that it will make no disclosure of the Disclosing Party's Confidential Information without obtaining the Disclosing Party's prior written consent. Additionally, the Receiving Party will restrict disclosure of Confidential Information to its employee(s), authorized agent(s) and/or independent contractors to whom disclosure is reasonably required, and such employee(s), authorized agent(s) and/or independent contractor(s) shall be explicitly bound by these confidentiality obligations and will use reasonable care, but not less care than they use with respect to their own information of like character, to prevent disclosure of any Confidential Information. Nothing contained in this Agreement shall be construed as granting or conferring rights by license or otherwise in any Confidential Information disclosed under this Agreement. This Section 11 shall survive any termination of this Agreement for a period of three (3) years thereafter. The Receiving Party agrees that monetary damages for breach of confidentiality under this Section 11 may not be adequate and that the Disclosing Party shall be further entitled to seek injunctive relief.

Notwithstanding anything contained herein to the contrary, confidentiality provisions shall not apply where the Receiving Party can demonstrate with clear evidence that the information: (a) was previously known to the Receiving Party at the time of disclosure, free of any obligation to keep it confidential; (b) became publicly known through no wrongful act of the Receiving Party; (c) was rightfully received by the Receiving Party from a third party who was not bound under any confidentiality provisions; or (d) was disclosed pursuant to judicial order, requirement of a governmental agency or by operation of law

## 12. INDEMNIFICATION:
Each party shall indemnify and hold harmless the other party, its officers, directors, employees, sub licensees, affiliates, contractors and agents from any and all claims, losses, liabilities, damages, expenses and costs (including attorneys' fees and court costs) which result from a third party claim, complaint or cause of action (a "Claim") from the indemnifying party's breach of any provision of this Agreement, provided that each gives the other prior Written Notice of any such Claim and the indemnified party has the right to participate in the defense of any such Claim at its expense.

## 13. TERMINATION:
Either party may terminate this Agreement upon providing forty-eight (48) hours written notice to the other party.

## 14. ARBITRATION:
Any dispute or controversy arising out of or related to this IO or any alleged breach hereof shall be settled by binding arbitration before the American Arbitration Association in accordance with the then current Commercial Arbitration Rules of the American Arbitration Association in Monmouth County, New Jersey. And award shall be final and binding upon the parties. Judgment upon any award may be entered in any court of competent jurisdiction. Nothing in this paragraph will be construed to preclude any party from seeking injunctive relief in order to protect its rights pending arbitration.

## 15. MISCELLANEOUS:
**Exclusive-**If an IO has "Exclusive" marked, then Agency shall be the exclusive CPA affiliate Agency for that offer and Advertiser shall not contract for affiliate marketing with another agency, network, or publisher for that offer.

**Governing Law-** This Agreement shall be governed by, interpreted and construed in accordance with the laws of the State of New Jersey, notwithstanding its choice of law provisions.

**Relationship of the Parties-** The parties to this Agreement are independent contractors and no agency, partnership, joint venture or employer-employee relationship is intended or created hereby.

**Entire Agreement-** This Agreement sets forth the entire understanding and agreement of the parties and supersedes any and all prior oral or written agreements or understandings between the parties as to the subject matter of this Agreement and may be changed only by a subsequent writing signed by both parties. This Agreement is non-exclusive to Company and Company shall have the right to enter into similar agreements with other third parties.

| Plymouth Rock Management Company of New Jersey | AvengeDigital LLC |
|---|---|
| Signed: *[signature]* | Signed: *Alex Elperin* |
| Printed Name: Will Jerro | Printed Name: Alex Elperin |
| Title: President | Title: CEO |
| Date: 11-16-2015 | Date: 12/03/2015 |