*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO FEBRUARY 1, 2021

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                       \*
ROBERT W. CLOUGH II, on behalf   \*
of himself and others similarly  \*
situated,                              \*
                                       \*  20-cv-345-LM
                Plaintiff,    \*  October 13, 2020
                                       \*  9:35 a.m.
                v.                \*
                                       \*
PLYMOUTH ROCK ASSURANCE        \*
CORPORATION and AVENGE DIGITAL,  \*
LLC,                                   \*
                Defendants.    \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


TRANSCRIPT OF MOTION HEARING
HELD VIA VIDEOCONFERENCE
BEFORE THE HONORABLE LANDYA B. McCAFFERTY


Appearances:


For the Plaintiff:         Edward A. Broderick, Esq.
                       Broderick & Paronich PC

                       Roger B. Phillips, Esq.
                       Phillips Law Office


For the Defendants:        Joseph M. Cacace, Esq.
                       Todd & Weld LLP


Court Reporter:           Liza W. Dubois, RMR, CRR
                       Official Court Reporter
                       U.S. District Court
                       55 Pleasant Street
                       Concord, New Hampshire 03301
                       (603) 225-1442

P R O C E E D I N G S

1

2          THE CLERK:  For the record, this is a motion

3   hearing in civil case 20-cv-345-LM, Clough vs. Plymouth

4   Rock Assurance Corporation, et al.

5          THE COURT:  All right.  Good morning,

6   everybody.  It's good to see you.

7          Let me just have you go ahead and state your

8   name and who you represent, just for the record.

9          MR. PHILLIPS:  Roger Phillips, local counsel

10  for the plaintiff, Robert W. Clough.

11          MR. BRODERICK:  Good morning, your Honor.

12  Edward Broderick, also for the plaintiff.

13          MR. CACACE:  Good morning, your Honor.

14  Joseph Cacace for the defendants, Plymouth Rock

15  Assurance Corporation and Avenge Digital.

16          THE COURT:  Excellent.  All right.

17          Okay.  Well, this is your motion to dismiss

18  and it's based on 12(b)(2) and 12(b)(6).  And so what

19  I'd like to do is start with the 12(b)(2) argument

20  and -- and then move on to 12(b)(6) and sort of take

21  them separately, hear argument from both of you -- all

22  of you, if need be -- on each motion.

23          Let me just start with the standard of review

24  and just make sure we're in agreement with respect to

25  the standard of review that applies to this motion.

1          So we've got -- the 12(b)(2) is a little

2    trickier than 12(b)(6), so let me just start with the

3    easier one, the 12(b)(6) standard we all know, we're

4    very familiar with.

5          I must accept the factual allegations in the

6    complaint as true and construe reasonable inferences in

7    the plaintiff's favor and determine whether the factual

8    allegations in the plaintiff's complaint set forth a

9    plausible claim upon which relief may be granted.

10          A claim is facially plausible when the

11    plaintiff pleads factual content that allows the Court

12    to draw the reasonable inference that the defendant is

13    liable for the misconduct alleged.

14          So any disagreement with the generic standard

15    for 12(b)(6) that I just laid out?  Anything else, any

16    more meat on the bones, with respect to the standard of

17    review?

18          MR. CACACE:  No disagreement here, your Honor.

19    That's -- I think that's sufficient.

20          MR. BRODERICK:  None for plaintiff either,

21    your Honor.

22          THE COURT:  Okay.  All right.

23          Now, 12(b)(2), I just want to make sure --

24    it's a little trickier, but basically, under 12(b)(2),

25    the plaintiff is going to bear the burden of

1     establishing that jurisdiction exists.

2          Where I am not -- no one's asking for an

3     evidentiary hearing.  I'll be applying the prima facie

4     standard today.  Anybody disagree with the applicability

5     of the prima facie standard today?

6          MR. CACACE:  No, your Honor.

7          MR. BRODERICK:  No.

8          THE COURT:  Okay.

9          MR. BRODERICK:  No, your Honor.

10         THE COURT:  All right.  And to make a prima

11    facie showing, plaintiff must proffer evidence that's

12    sufficient to support finding all the facts essential to

13    personal jurisdiction and may not rely on unsupported

14    allegations.

15         The Court must accept plaintiff's properly

16    documented evidentiary proffers as true and construe

17    them in the light most favorable to plaintiff's

18    jurisdictional claim.

19         However, I do not need to credit conclusory

20    allegations or draw farfetched inferences as I weigh the

21    prima facie case.

22         I don't sit as a fact finder.  I ascertain

23    only whether the facts duly proffered, fully credited,

24    support the exercise of personal jurisdiction.

25         Anybody disagree with the standard with

1    respect to 12(b)(2) prima facie case?

2              MR. CACACE:  No, your Honor.

3              MR. BRODERICK:  No, your Honor.

4              THE COURT:  Okay.  Now, personal jurisdiction.

5    So we've got 12(b)(2).  Let's start with 12(b)(2) and

6    hear arguments with respect to that.  We agree on the

7    prima facie case and the standard of review here.  No

8    one's arguing general jurisdiction.  You're asserting

9    specific jurisdiction; is that correct?

10             MR. BRODERICK:  Correct, your Honor.

11             THE COURT:  Okay.  And we all know that at

12    least, the law is fairly well established there.  The

13    cause of action must arise directly out of or relate to

14    the defendant's forum-based contacts.

15             And then we look at three elements -- and I

16    won't go into great detail on these because I know

17    counsel's familiar with them -- but the three elements

18    are relatedness, purposeful availment and

19    reasonableness, the Gestalt factors, fundamental

20    fairness.

21             So I'll be looking for, you know, sufficient

22    proffers with respect to those three elements.

23             And let me hear from Attorney Cacace.

24             MR. CACACE:  It's Cacace.

25             THE COURT:  Cacace.  Thank you.

1          MR. CACACE:  Thank you, your Honor.

2          Yeah.  So I think it's appropriate to have

3   started with the standard of review because it is the

4   plaintiff's burden here to establish jurisdiction.  The

5   plaintiff has the burden of proof and plaintiff hasn't

6   met that burden.

7          What plaintiff is doing is relying on

8   unsupported allegations in the complaint, which the

9   cases are clear -- we've cited cases to this effect --

10  that the plaintiff simply cannot do that, particularly

11  whereas here we have put in actually now two

12  declarations supplementing sort of, you know, the dearth

13  of jurisdictional facts in the complaint.  And those

14  affidavits that we've put in are unrebutted and

15  undisputed, that there are no contrary affidavits or any

16  contrary evidentiary proffers.

17         And so, really, what this comes down to is

18  that neither defendant purposely directed any conduct

19  toward New Hampshire at all.  That's the key linchpin

20  here.

21         And so just to sort of -- I think just a

22  little bit of housekeeping and then background from the

23  facts set forth in the two declarations is important.

24         So, first, Plymouth Rock Assurance Corporation

25  is not the proper party.  We've said that in a

1    declaration and dropped a footnote I think in every

2    filing -- every pleading that we've filed.  That entity

3    actually has no known relationship with Avenge Digital

4    at all.  No contact or relationship with the plaintiff.

5              Plymouth Rock Management Company of

6    New Jersey, however, is the legal entity that had a

7    contractual relationship with Avenge Digital.  That

8    company is based in -- headquartered in and incorporated

9    in New Jersey.

10             Now, I know we're not dealing with general

11   jurisdiction, so as for specific jurisdiction, the

12   declaration, particularly the supplemental declaration

13   of Mr. Baumgartner from Plymouth Rock, makes a few

14   things clear that I think are dispositive when -- in

15   terms of personal jurisdiction here.

16             So, first, the auto insurance marketing

17   campaign that was being done when the plaintiff alleges

18   that he was called was restricted to New Jersey drivers

19   only.  There were no New Hampshire -- Plymouth Rock

20   Management Company of New Jersey was not selling and was

21   not trying to sell policies to New Hampshire drivers,

22   was not calling New Hampshire, was calling New Jersey to

23   issue New Jersey policies.

24             None of the affiliated companies that were

25   selling insurance policies -- none of the companies

1  affiliated with Plymouth Rock Management Company of

2  New Jersey was selling insurance policies in

3  New Hampshire.  It just really had nothing to do with

4  New Hampshire.

5          Second, Plymouth Rock -- actually, neither

6  defendant called -- called the plaintiff.  It was a

7  third-party intermediary and the call got transferred

8  and ultimately ended up with Plymouth Rock of New Jersey

9  who, again, did not initiate the call.  Call came in and

10  then the individual on the call, who is the plaintiff

11  here, identified himself falsely as Robert Phillips,

12  gave an address in Kinnelon, New Jersey, said he had a

13  valid New Jersey driver's license, all of which is true

14  about a different individual named Robert Phillips in

15  Kinnelon, New Jersey, but not the plaintiff who

16  represented these things to Plymouth Rock Management

17  Company of New Jersey.

18          New Hampshire was not mentioned on the call at

19  all.  So, really, none of this has anything to do with

20  New Hampshire.  This is a New Jersey marketing campaign

21  and everything that the plaintiff said on the call that

22  he had -- the only call that he had with Plymouth

23  Rock -- suggested that he was a New Hampshire resident,

24  had a New Hampshire driver's license -- or, sorry,

25  New Jersey -- New Jersey resident with a New Jersey

1   driver's license.  Nothing -- nothing at all about

2   New Hampshire.

3           Even without that, however, even without all

4   of those critical and I think dispositive jurisdictional

5   facts, the complaint itself just isn't -- isn't

6   sufficient.  The complaint itself doesn't allege any

7   purposeful availment into New Hampshire by either

8   defendant.

9           There's -- there's no allegation that either

10  defendant knew where the plaintiff was located when he

11  was called, where he resided, or actually even the area

12  code of his cellular telephone number that he claims

13  that he was called on.  So there really just aren't

14  enough allegations here.

15          And if I could just make a couple of quick

16  points with respect to each defendant.

17          As to Avenge Digital, the -- really, the key

18  allegation in the complaint is that Avenge made or

19  caused to be made the illegal telemarketing calls at

20  issue to be sent into this district.

21          But, again, there's no allegation that

22  plaintiff's cell phone number had a New Hampshire area

23  code or that Avenge knew that it did or that Avenge knew

24  where he was located.  There's no purposeful direction

25  at all towards New Hampshire, particularly in light of

1    what we know from the declaration submitted by

2    Mr. Baumgartner.

3            The case law, and this is Supreme Court case

4    law, is clear that the plaintiff cannot be the only link

5    between the defendant and the forum state.  And that is,

6    at most, what we have here.

7            As to Plymouth Rock, the linchpin allegation

8    is that Plymouth Rock offered its insurance services to

9    the plaintiff in this district, including by making

10   additional efforts to contact the plaintiff directly to

11   sell and service this following the initial

12   telemarketing calls.

13           So there's not -- there's no allegation that

14   Plymouth Rock actually called into the -- called into

15   New Hampshire.  It -- the allegation is that it offered

16   insurance services once Plymouth Rock spoke to the

17   plaintiff.

18           The TCPA violations, though, don't arise out

19   of that.  They don't arise out of offering insurance

20   services or giving an insurance quote to him.  They

21   arise out of the call with Plymouth -- which Plymouth

22   Rock had nothing to do with.

23           Again, plaintiff doesn't allege that Plymouth

24   Rock made the calls to New Hampshire, doesn't allege

25   that they directed Avenge or any other party to call

1   New Hampshire or even knew that they would be making

2   calls to New Hampshire.  And, again, the --

3   Mr. Baumgartner's affidavit makes vivid this was all

4   about New Jersey.

5            And, finally, you know, Avenge's conduct

6   cannot be imputed to Plymouth Rock here on an agency

7   theory for personal jurisdiction.  We submitted the

8   contract between the two which has a provision that

9   makes clear that Plymouth Rock -- that it is not an

10  agency contract; that Avenge Digital is an independent

11  contractor, not an agent of Plymouth Rock.  There's no

12  apparent or actual authority here and Plymouth Rock did

13  not ratify any alleged in-forum conduct, including, you

14  know, calling into New Hampshire.

15           So at the end of the day, this -- this case

16  just doesn't involve any -- any purposeful availment of

17  New Hampshire, any direction towards New Hampshire.

18  It's all about New Jersey.

19           THE COURT:  All right.  Attorney Broderick.

20           MR. BRODERICK:  Your Honor, I think the -- the

21  personal jurisdiction argument really merges with the

22  agency allegations and whether the agency allegations

23  are sufficient.  Because as we cited in our papers, the

24  First Circuit is very clear that, actually,

25  jurisdictional context of an agent may be imputed to a

1   principal.

2          So it -- it's more of a question of have we

3   sufficiently alleged the agency relationship than of --

4   there's not a separation between Plymouth Rock for

5   jurisdictional purposes and the calling into

6   New Hampshire.

7          The other thing I want to make clear is this

8   is a 603 area code.  We didn't list the entire number

9   because, you know, for privacy purposes, but it -- he

10  does have a 603 number and is -- is a New Hampshire

11  resident.

12         So that alone is enough to say, look, if

13  you're directing a call to someone on a 603 number, for

14  jurisdictional purposes, you don't need to know exactly

15  where that person is going to answer the phone,

16  particularly in the case of a cellular phone, where you

17  could be anywhere.  If you're calling a 603 number,

18  you're certainly calling a New Hampshire resident.

19  That's you're -- that's -- that's what you would -- I

20  can't understand any other -- any other understanding of

21  what -- where you're calling.

22         You know, there would be nowhere you could sue

23  someone under their theory because they never know where

24  they're -- where they're availing themselves of.  They

25  could only be sued in their forum state.

1          So I would look back to the adequacy of the

2    agency allegations.  And it's -- it's not required that

3    they actually knew what was happening; it's they knew or

4    should have known that this conduct was going on.

5          And they -- the -- the suggestion that because

6    Plymouth Rock is not in contact with Avenge Digital,

7    rather, the -- the management entity, which apparently

8    handles marketing, the connection is between Plymouth

9    Rock and its own subsidiary management company which

10   hired Avenge Digital to do telemarketing.

11         And the fact that the -- that they didn't

12   intend to market to people in New Hampshire is, first

13   of all, a -- a proposition we'd want to challenge in

14   discovery, but it's also -- because they're affiliated

15   with Prudential, which does sell insurance nationwide,

16   but it's an incorrect sort of analysis of agency to say,

17   well, I hired someone to deliver pizza; I didn't hire

18   them to get into an accident while they were delivering

19   pizza.  The question is is it within the scope of what

20   you were authorized to do and, in this case, it's

21   telemarketing.

22         More often than not in these cases people will

23   say, we have no connection with the entity that -- that

24   directed the call.  But here, as a direct result of the

25   call, Mr. Clough wound up on the phone with Plymouth

1   Rock.

2          So it's not -- it's -- they're not unconnected

3   to this and that's one of the factors that the FCC has

4   cited in terms of saying, well, what -- what -- what

5   are the indicia of an agency relationship and the

6   ability to transfer calls directly to the principal

7   is -- supports -- supports agency, particularly at the

8   pleading standard.

9          Because this is -- these are facts that are

10  solely within the possession of the defendants.  No

11  plaintiff could know all -- every in and out of the

12  contractual relationship.  But these facts have time and

13  again been found sufficient to support a finding of

14  agency.

15         And, similarly, as to the -- the ATDS

16  allegation, there's a pause and a click and no plaintiff

17  could know anything more than that when they get an

18  illegal call.

19         So to hold the pleading standard to you have

20  to know the model and serial number of the dialing

21  system would essentially amount to judicial

22  nullification of the ATDS prohibition because they --

23  you -- you simply can't know that.  And a well pleaded

24  allegation under *Iqbal* does not mean you have to

25  survive -- you could prevail on summary judgment at the

1  pleading stage.  It's enough to state a plausible claim.

2      And there's really nothing else that could be

3  said about the -- it being an ATDS other than the pause

4  and the click, which is a telltale sign that you are

5  actually being called on a dialing system that is set up

6  so that the call center people pick up and don't have to

7  dial themselves.

8      But, again, that -- I think that they're

9  overstating what the -- what the pleading standard is

10  there in terms of establishing agency and, therefore,

11  personal jurisdiction.

12      THE COURT:  Go ahead, Attorney Cacace.

13      MR. CACACE:  Thank you, your Honor.  Just

14  briefly.

15      I think most of what Mr. Broderick focused on

16  was not personal jurisdiction, but this agency question

17  which really is relevant to the second issue, the

18  12(b)(6) issue, the vicarious liability question.  I

19  think he's sort of, you know, merging the two standards

20  here and I want to stay focused on the 12(b)(2)

21  standard, which is -- places the burden on the plaintiff

22  to present facts.

23      And most of the facts that Mr. Broderick

24  referenced, including the six -- the allegation that the

25  area code of the telephone number is 603 is not in the

1   record, it's not in the complaint, there's no affidavit

2   offered in support of it, and so the plaintiff just

3   simply haven't -- hasn't carried his burden on that

4   issue.

5          But even if he did, even if we knew that this

6   was a 603 number, this is a cell phone that we're

7   talking about and this is a New Jersey-focused marketing

8   campaign and folks are called because they enter their

9   information online on some third-party website saying

10  that they're interested in car insurance.  And he

11  wouldn't have been called if he didn't say that, you

12  know, he was -- had this New Jersey address, which is

13  the address he gave on the call with Plymouth Rock.

14         And so when you look at the actual facts here,

15  this call had everything to do with New Jersey and

16  nothing to do with New Hampshire.  The area code doesn't

17  change that.  And we've cited a bunch of cases where

18  simply the area -- you know, simply calling an area code

19  doesn't create jurisdiction.

20         For example, there was one where there was a

21  hotel in Nevada, called someone who actually was from

22  California, but called them on their California cell

23  phone number while that person was at the hotel in

24  Nevada, and the Court held that there was no personal

25  jurisdiction in California just on the basis of this

1  area code.

2          There's a number of cases to that effect.

3  Really what the cases hold is that, you know, a person

4  has to be in -- you know, have -- the caller has to be

5  aware of the area code and the -- the person called has

6  to be in that -- in that state, present in that state at

7  the time.

8          I mean, you know, I think the Court can take

9  judicial notice of the fact that people move around with

10 their cell phones all the time.  I had my Connecticut

11 cell phone in Massachusetts for 10 or 12 years and just

12 changed it not that long ago.  But I don't think, you

13 know, a call to my 203 number would have subjected, you

14 know, somebody to personal jurisdiction in Connecticut

15 automatically from here in Massachusetts.

16          As for the agency issue, and I think we'll get

17 into this in the next -- the next section, but one point

18 that I wanted to make is that the -- the -- the contract

19 makes it clear that what -- if, in fact, an illegal call

20 was made that's outside of the scope of the agency here,

21 there's actually -- and I think we've cited this in our

22 reply brief -- there's a specific representation of

23 warranty made by Avenge that it would comply with and

24 not violate privacy and related laws like these.  And I

25 can point you to that in a moment.

1          And then, finally, just the -- the ATDS, the

2     automatic dialing system, is not at issue here.  We

3     just -- we haven't raised that.  So I think that's --

4     that's just a distraction.

5          So, you know, at the end of the day -- and

6     I'll stop here -- plaintiff has not met his burden of

7     proof of establishing that New Hampshire has personal

8     jurisdiction over either defendant here.

9          THE COURT:  Okay.  This case seems like a case

10    that would be -- could use expedited discovery to get

11    past this pleading stage because the pleading stage is

12    obviously so favorable, frankly, to plaintiff's

13    allegations.

14         And I think here you've got two different

15    versions of what's gone on -- what's happened and at the

16    pleading stage, ultimately, I construe facts in favor of

17    jurisdiction.  And I think there's just enough here to

18    satisfy this first hurdle, the pleading stage.

19         Plaintiff alleges that the defendants had

20    sufficient minimum contacts with New Hampshire and I've

21    jotted down just a few from the complaint.  Avenge

22    Digital made or caused to be made the illegal

23    telemarketing calls at issue to be sent into this

24    district.

25         Plymouth Rock, in another part of the

1   complaint, offered its insurance services to the

2   plaintiff in this district, including by making

3   additional efforts to contact the plaintiff directly to

4   sell its services following the initial telemarketing

5   calls.  That's the allegation.

6          At no point, according to the complaint, has

7   plaintiff sought out or solicited information regarding

8   Plymouth Rock's services.

9          And then, finally, at the end of January,

10  plaintiff alleges that plaintiff engaged the

11  telemarketer to learn their identity and the call

12  promoted Plymouth Rock's services and then the caller

13  attempted to sell the plaintiff an insurance policy for

14  Plymouth Rock.

15         Now, it seems to me that this at this early

16  stage satisfies the three elements of specific personal

17  jurisdiction.

18         First, plaintiff's claims are related to

19  New Hampshire because plaintiff alleges that they were

20  called in New Hampshire by New Hampshire numbers.  This

21  case would not exist without those calls.

22         Second, defendant purposely availed themselves

23  of New Hampshire's laws by allegedly reaching out into

24  the state for sales and marketing purposes.  Outreach

25  into the forum is voluntary and makes a potential

1   lawsuit foreseeable.

2          Third, subjecting defendants to personal

3   jurisdiction in this case is reasonable because the

4   Gestalt factors weigh in favor of efficient resolution

5   at this stage.

6          Defendants argue that Avenge Digital made

7   calls to a cell telephone that did not have a

8   New Hampshire area code and that Avenge Digital did not

9   know where plaintiff was located.

10         Defendants further argue that Avenge Digital's

11   market efforts were directed entirely toward New Jersey

12   and that plaintiff made proactive efforts to become

13   involved in the marketing campaign for the purposes of

14   this lawsuit.

15         However, these are, at this stage, disputed

16   facts and, thus, cannot be considered at this stage.  At

17   a later stage, however, it may be appropriate to hear

18   these arguments and if the record bears out what

19   defendants are saying to hear this argument at a motion

20   for summary judgment stage.

21         And, additionally, with respect to the

22   vicarious liability, defendants argue that Plymouth Rock

23   is not subject to personal jurisdiction because the TCPA

24   violations did not arise out of Plymouth Rock's attempt

25   to contact the defendant, only an alleged robocall by

1    Avenge Digital, and I think plaintiff is correct that in

2    the First Circuit an agent's conduct may be attributed

3    to a principal for jurisdictional purposes.

4            And plaintiff alleges that Plymouth Rock

5    ratified Avenge Digital's call to a potential customer

6    and that Plymouth Rock accepted a transferred call from

7    Avenge Digital to discuss purchasing an insurance

8    policy.

9            While neither of these allegations are

10   connected to New Hampshire, they are sufficient, I

11   think, to create a potential agency relationship at this

12   early motion to dismiss stage.  At a later stage, it may

13   be appropriate to deny plaintiff's claim at a motion for

14   summary judgment, but at this stage, I am going to

15   permit this claim to go forward.

16           I would be open to expedited scheduling,

17   expedited discovery, to try to get this -- if, in fact,

18   defendants are correct about these facts -- to get this

19   at a summary judgment stage on a faster track.

20           All right.  I just want to clarify.

21   Defendant's not -- has, I think, stated in the pleadings

22   you're no longer pressing the argument that the TCPA

23   violates the First Amendment.  That's the case?

24           MR. CACACE:  Correct, your Honor.  The Supreme

25   Court resolved that earlier this summer in a splintered

1  decision, but resolved it -- resolved the issue.

2          If I could, just respectfully, I do just want

3  to state for the record that I think the -- the Court's

4  ruling on that first issue sort of does flip the -- the

5  burden -- the burden of proof and the standard.  It,

6  again, is not a pleading standard under 12(b)(2), it's

7  not a 12(b)(6) standard, and, you know, the plaintiff

8  does bear the burden of presenting evidence of

9  jurisdiction and I just don't think the plaintiff has

10  done that here.

11          But you've -- you've heard that from me

12  already.

13          THE COURT:  I -- I agree I don't know how

14  they're going to get evidence until they do some basic

15  discovery.  What they have now are they have alleged

16  facts in the complaint.  And at this early stage, I

17  think it's sufficient to at least get to some discovery.

18          And if, in fact, it turns out in discovery

19  that you are correct, Attorney Cacace, I would be open

20  to entertaining an expedited schedule.  And I tell

21  counsel that for your benefit -- benefit of all counsel.

22          Let's move now to this vicarious liability

23  argument, the 12(b)(6) standard.

24          Let me hear from Attorney Cacace.

25          MR. CACACE:  Thank you, your Honor.

 1          So the -- the first one is that there's

 2   controlling legal authority here that supports vicarious

 3   liability or that holds that vicarious liability is

 4   available.  Under the TCPA, the statute doesn't

 5   expressly provide for vicarious liability.  The Supreme

 6   Court and the First Circuit have not directly addressed

 7   it.  The First Circuit certainly hasn't and the Supreme

 8   Court hasn't -- (technical difficulties)

 9          THE COURT REPORTER:  I'm --

10          MR. CACACE:  -- the case.  They simply had, as

11   they put in the footnote, no cause to question -- I

12   think it was a footnote, but no cause to question the

13   Ninth Circuit's holding that vicarious liability was

14   available because it was not raised on appeal.  The --

15   the Supreme Court simply didn't grant cert on that

16   question.  It wasn't briefed and so they didn't address

17   it.

18          What the plaintiff relies on here is guidance

19   in an FCC declaratory ruling about how the common law of

20   agency might apply under the TCPA.  And the *Dish Network*

21   case out of the DC circuit that we cited actually

22   dismisses a petition for review of that very declaratory

23   ruling because the guidance has "no binding effect on

24   courts," and as the DC circuit said, it is not entitled

25   to deference under *Chevron*.  So its force is dependent

1 entirely on its power to persuade.

2          And we've cited several courts that have found

3 that that guidance is not persuasive.  The *Murray vs.*

4 *Choice Energy* case out of the Southern District of Ohio,

5 *Bridgeview Healthcare vs. Clark* case out of the Northern

6 District of Illinois are two examples.

7          But even if vicarious liability is available

8 here, the allegations are not sufficient to state a

9 claim for vicarious liability against Plymouth Rock.

10 There's -- there's insufficient allegation of actual or

11 apparent authority or ratification.  Actual authority

12 requires the mutual consent that the agent is acting on

13 behalf of and for the benefit of the principal and

14 critically subject to the principal's control.

15          There's just not enough specific factual

16 allegations here.  I mean, the plaintiff alleges some

17 sort of formulaic sort of, you know, elements of -- of

18 agency law and says, well, you know, Plymouth Rock had

19 an interim control, whatever that means, doesn't

20 describe what that means, and doesn't actually, you

21 know, put any facts on that -- on the bones.  You know,

22 you really just have sort of these bare elements of

23 what, you know -- of agency law without any facts to

24 establish what that interim control is or might be.

25          And if you look at the -- the contract,

1   the contract that we submitted, you know, which is

2   incorporated into -- into the complaint here, it -- I

3   mean, it says, you know, that there is no agency

4   relationship here, it's an independent contractor

5   relationship, and it makes clear that Avenge Digital

6   made a representation that it is -- it will not violate

7   any privacy laws, which would include -- wouldn't

8   violate any applicable laws of regulations, including,

9   without limitation, privacy and deceptive trade

10  practices laws.

11          Plymouth Rock did everything that -- it

12  wasn't -- (technical difficulties)

13          THE COURT REPORTER:  I'm sorry.  You cut out,

14  Attorney Cacace.  I'm sorry.

15          MR. CACACE:  Did I just -- just cut out, just

16  now?

17          THE COURT REPORTER:  Just for a second, yes.

18          MR. CACACE:  So Plymouth Rock did everything

19  that it could to ensure its agent -- or, sorry, that its

20  counterparty to the contract was not going to violate

21  the TCPA or any related law.

22          The level of control here -- there just simply

23  isn't any allegation -- if you look at the cases that

24  we've cited, the level of control that's required is,

25  you know, the -- the principal has control over the --

1   who is called, when they're called, the contents of

2   what's -- what's delivered, the timing of the calls, the

3   recipients.  None of that -- there's no allegation

4   that -- that Plymouth Rock controlled any of that.

5           What -- the allegation is that a call was made

6   and that it ended up getting transferred to Plymouth

7   Rock.  That -- that is not enough to establish control

8   over the calls being made here.

9           So that's actual authority.  Apparent

10  authority requires something said or done by the

11  principal, which would be Plymouth Rock here, on which

12  the third person reasonably relied.  And there's just --

13  there's simply no allegation here that Plymouth Rock

14  said anything on which the plaintiff relied to believe

15  that Avenge had apparent authority here.

16          And the same thing with ratification.  The

17  ratification requires manifestation of assent to the

18  particular conduct here, not -- not, you know, just

19  making calls, but making calls in a way that allegedly

20  violates the TCPA.  There's no ratification by Plymouth

21  Rock of that.  There's no facts in support.  It's really

22  just, you know, formulaic assertions of control and the

23  like.

24          And the only real specifics are -- really are

25  irrelevant to vicarious liability.  I mean, the

1    plaintiff alleges that Plymouth Rock had absolute

2    control over whether and under what circumstances it

3    would accept a customer.  Accepting a customer is

4    different than making calls.

5         It also had allegedly had -- gave interim

6    construction -- sorry -- interim instructions by

7    providing the volume of calling and leads that it would

8    purchase.  Again, that has nothing to do -- volume of

9    calling has nothing to do with who you're going to call

10   and where those -- those folks are located and how the

11   calling is going to be -- going to be made, how the

12   calling's going to be done.  So there's really nothing

13   about Plymouth Rock's control over Avenge Digital's

14   alleged actions.

15        As far as Plymouth Rock knowing or, you know,

16   should have known that Avenge Digital was violating --

17   allegedly violating the TCPA, the allegation is that

18   Plymouth Rock previously received complaints about

19   telemarketing conduct of its unidentified third party

20   vendors, but it doesn't say that any of those third

21   party vendors was Avenge Digital.

22        As to Avenge Digital, the allegation is that

23   it had previously been sued for TCPA violations, but

24   there's no allegation as to what the outcome of that

25   suit was or even if Plymouth Rock was aware of it.

1          And so there's a Seventh Circuit case that we

2   cite on this that I think is very helpful here.  It's

3   from -- it's recent.  It's from this year.  I guess it's

4   *Warciak vs. Subway Restaurants*.  And in that case, the

5   Seventh Circuit held a contract between two entities,

6   which is all we have here, a contract between Plymouth

7   Rock and Avenge Digital, is not enough, where in that

8   case T-Mobile maintained control over the content,

9   timing, and recipients of what was a text message

10  campaign there.

11          That's not enough.  There's no allegations

12  that Subway manifested the -- you know, T-Mobile was its

13  agent, and it's the same here.  There's just not enough

14  allegation of the control over the content, timing, or

15  recipients of the phone calls here and the allegations

16  fail as to vicarious liability.

17          THE COURT:  Attorney Broderick.

18          MR. BRODERICK:  Well, I -- to address that

19  Seventh Circuit case right off, it's a -- it's a --

20  frankly, I think it's a deviation from other Seventh

21  Circuit cases holding that vicarious liability does

22  attach under the TCPA and accepting that agency is a

23  particularly low bar in terms of the allegations that

24  one has to make in order to state a plausible claim of

25  agency.

1          The other thing about the *Warciak* case is the

2     agency finding is essentially dicta because there was a

3     wireless carrier exemption in that T-Mobile didn't

4     charge its customer and that is expressly exempt under

5     the TCPA.  So there was an entirely dispositive and

6     independent ground to find that the complaint did not --

7     did not state a claim for relief.

8          And the -- the cases that we cited, including

9     Judge Barbadoro's decision in the *Revenue Frontier* case,

10    there is vicarious liability under the TCPA and the

11    Supreme Court -- the interpretation of the Supreme

12    Court, what the defendant dismisses as dicta, is

13    actually an affirmation that vicarious liability is

14    available under the TCPA and that's how the courts that

15    we cited, including Judge Gorton in the *Rosenberg vs.*

16    *LoanDepot* case, that was the understanding that other

17    judges had of the Supreme Court's -- (technical

18    difficulties)

19          THE COURT REPORTER:  I'm sorry.  Excuse me.  I

20    don't know if it's my connection, but you cut out a

21    little bit, too.

22          MR. BRODERICK:  I did?

23          THE COURT REPORTER:  Yes, just a little bit.

24    You said, the understanding that other judges had of the

25    Supreme Court's -- and that's where you cut out a little

1    bit.

2           MR. BRODERICK:  Of the Supreme Court's comment

3    that they had no reason to question the Ninth Circuit's

4    holding that vicarious liability is available under the

5    TCPA.

6           So, you know, it -- in that the -- Plymouth

7    Rock can be held, you know, to personal jurisdiction in

8    New Hampshire, this -- the -- their potentially

9    vicariously liability for the same reasons, because we

10   plausibly stated a claim of an agency relationship which

11   necessarily supports imputation of that agent's contacts

12   with New Hampshire to them.

13          And by the same token, because we've stated a

14   claim of agency, we've stated a claim that they can be

15   vicariously liable.  The only real -- and I don't think

16   it has a lot of force, but the only way you could find

17   that -- that we haven't stated an agency claim is if

18   there's no agency available under the TCPA, which, given

19   the really large volume of vicarious liability cases and

20   what -- just contradicts that notion.

21          And we're not only relying on the FCC's

22   guidance.  These are courts adopting and applying a

23   common law of agency standard largely based on the

24   restatement of agency.  And under those principles,

25   there is -- we've stated both actual authority, apparent

1    authority, and ratification in that they got on the

2    phone with Mr. Clough and offered him -- offered him

3    insurance.

4           And I guess I'd add to that that it is not

5    just a -- if you knew -- if it knew or should have known

6    standard and the level of control is not that you're

7    remotely pushing the buttons for your agent.  You have

8    an agency relationship, they're authorized to

9    telemarket, and you're -- you're on the hook for the

10   good and the bad and contractual terms alone are not --

11   are not at all dispositive because you can say you're an

12   independent contractor and still be found to be an

13   agent.  And you can warn somebody, don't violate the

14   TCPA, but you're not allowed to sort of give a wink and

15   a nod that they are, in fact, violating the TCPA.

16          So we're -- but, again, we're only talking

17   about the pleading standard here and we think we've

18   cleared that bar.

19          THE COURT:  Attorney Cacace, anything further?

20          MR. CACACE:  No, your Honor.  I think just two

21   quick things.

22          First, all of the cases that -- finding or

23   holding that there is vicarious liability, you know,

24   sort of rely on -- would link back to the FCC guidance,

25   but in terms of the substance of it, again, there's --

1   there is a higher degree of control -- a higher level of

2   control that would be required here to establish

3   vicarious liability and it would be control over the

4   content, timing, and the recipients of these calls.  And

5   there's no allegation that Plymouth Rock did that.  The

6   allegation is that they received calls transferred to

7   them.

8          THE COURT:  Okay.  Perhaps no surprise, I'm

9   going to follow Judge Gorton, Judge Barbadoro, and find

10  there is vicarious liability under the TCPA.  And I

11  thought the *Rosenberg* case, as well as Judge Barbadoro's

12  reasoning in *Revenue Frontier* were persuasive to me.

13         Obviously I'm following the *Campbell-Ewald vs.*

14  *Gomez* case as well, which obviously noted that the Ninth

15  Circuit had deferred to that FCC ruling and they had no

16  cause to question it.

17         So based upon that, I find that a party who

18  engages in a third-party telemarketer -- who engages a

19  third-party telemarketer may be held vicariously liable

20  under federal common law agency principles for a TCPA

21  violation.

22         Now, I'm looking again at this complaint and,

23  again, I'm looking -- construing it favorably to

24  plaintiff.  And ultimately plaintiff alleges that

25  Plymouth Rock is vicariously liable for the unauthorized

1    actions of Avenge Digital in several pieces of

2    complaint.

3          The complaint alleges Avenge Digital has a

4    network of calling centers that it uses to engage in

5    telemarketing of insurance services.  The complaint

6    alleges Avenge Digital was contractually required to

7    promote Plymouth Rock products on their telemarketing

8    calls in order to potentially generate new customers and

9    they did so as they did with plaintiff here.

10         The complaint alleges Plymouth Rock knew that

11   Avenge Digital was making automated telemarketing calls

12   and alleges Plymouth Rock was knowingly and actively

13   accepting the business that originated through the

14   illegal telemarketing calls through the issuance of the

15   insurance policies.

16         I think at this stage plaintiff has alleged

17   sufficient facts to show that Plymouth Rock may have had

18   express or apparent authority over Avenge Digital.

19   Again, minimally sufficient at this stage.

20         Defendants argue that the TCPA does not

21   expressly provide for vicarious liability and that the

22   FCC finding is not binding on this court.  Those two

23   statements are correct, but they're insufficient at this

24   stage to justify me dismissing the claim under 12(b)(6).

25         I'm construing all reasonable inferences in

1    plaintiff's favor and I think it's facially plausible

2    that Plymouth Rock had actual or apparent authority over

3    Avenge Digital.

4         Now, defendants argue that the complaint

5    merely alleges that Plymouth Rock hired Avenge Digital

6    to promote Plymouth Rock's products via telemarketing

7    calls and that Plymouth Rock accepted business that

8    originated from the calls.  Well, in fact, plaintiff

9    also alleges, though, that Plymouth Rock knew of Avenge

10   Digital's conduct in violation of the TCPA.

11        There are -- there is case law, as Attorney

12   Cacace points out, where TCPA complaints were dismissed

13   for failure to allege sufficient facts.  *Warciak* is one.

14   However, here, I believe this complaint alleges slightly

15   more facts than a simple contract between the parties.

16   And while not all contracts form an agency relationship,

17   I think it is possible that the contract between

18   Plymouth Rock and Avenge Digital created an agency.  We

19   don't know at this stage, but it's plausibly alleged.

20        In short, Plymouth Rock may be vicariously

21   liable for Avenge Digital's call to plaintiff in

22   New Hampshire on a New Hampshire cell phone.

23        Those are my findings with respect to the

24   12(b)(2) and the 12(b)(6) motions at this stage.

25        I find, in conclusion, plaintiff has made a

1   prima facie showing that this Court has specific

2   jurisdiction over defendants.  Plaintiff has also shown

3   that Plymouth Rock may be vicariously liable for the

4   actions of Avenge Digital.  Accordingly, I dismiss -- I

5   deny defendant's motion to dismiss under Rule 12(b)(2)

6   and 12(b)(6).

7           I do not comment at all in any way, shape, or

8   form, on the facts and whether or not the facts will

9   support these allegations.  And as I've said, I'm open

10  to an expedited discovery schedule to try to have the --

11  the issues.  If, in fact, defendants are correct, they

12  will bear those out in discovery and I'm open to a joint

13  proposal from counsel with respect to a discovery

14  schedule.  If there are any discovery disputes and you

15  need some help resolving them, I'd happy to do that for

16  you quickly, informally.

17          But in the meantime, if you would like to

18  propose an expedited schedule, I certainly would be open

19  to that to try to have these issues resolved.  It

20  doesn't seem as though it would take voluminous amounts

21  of discovery to do that based on what I'm hearing,

22  but --

23          MR. CACACE:  And, your Honor -- you're

24  suggesting that that would be focused both on personal

25  jurisdiction and vicarious liability?

```
1                  THE COURT:  Yes.
2                  So if, in fact, you can reach an agreement on
3        some sort of expedited schedule, I'd be interested in
4        that.  And then if it moves past summary judgment, we'll
5        talk about some sort of trial and I'll be open to
6        creative resolution at that stage as well.  So in terms
7        of the pandemic and where it's going, it doesn't look --
8        it doesn't look like it's going away.
9                  So, in any event, please meet and confer and
10       talk about discovery and see if it can't be done or
11       proposed on an expedited basis.
12                 Anything further to discuss with me before we
13       move along?  And I know that -- I know that there has
14       been a proposed discovery schedule filed already.  I'm
15       suggesting that perhaps there's a way to resolve this
16       case on a more expedited basis.  It seems as though it's
17       a finite universe of facts.
18                 So anything further before I adjourn?
19                 MR. CACACE:  I don't think so, your Honor.
20                 MR. BRODERICK:  No, your Honor.  Thank you.
21                 THE COURT:  All right.  It's very nice to have
22       you here and very nice to see you.  I hope you all
23       remain safe.
24                 MR. BRODERICK:  Yes, likewise, your Honor.
25                 MR. CACACE:  Same to you, your Honor.
```

1          MR. PHILLIPS:  You also.

2          THE COURT:  Take care.

3          MR. BRODERICK:  Okay.  Take care.  Thank you.

4          (Proceedings concluded at 10:24 a.m.)

C E R T I F I C A T E


       I, Liza W. Dubois, do hereby certify that
the foregoing transcript is a true and accurate
transcription of the within proceedings, to the best of
my knowledge, skill, ability and belief.


Submitted: 11/2/2020     */s/  Liza W. Dubois*
                              LIZA W. DUBOIS, RMR, CRR